Ricky Lee BINGHAM, Appellant,

v.

Sharon Kay BINGHAM, Appellee.

No. 2–90–049–CV.

Court of Appeals of Texas,
Fort Worth.

June 12, 1991.

Alan M. Glassman, for appellant.

Ronald W. Roberts, for appellee.

Suzie Johnson, for minor child.

Before JOE SPURLOCK, II, FARRIS and MEYERS, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Appellant and appellee were divorced on August 26, 1988, at which time they agreed to a decree of joint custody for their son. After the date of the divorce, Sharon Kay Bingham, appellee, married another person and moved from the Dallas–Fort Worth area. On March 9, 1989, Sharon filed a Motion to Modify in Suit Affecting the Parent/Child Relationship. Ricky Lee Bingham, appellant, filed his answer and cross-motion to modify on March 27, 1989. The court ordered a social study be conducted and the parties engaged in other discovery matters. A master made recommendations concerning the modification. A pretrial order and two sets of temporary orders were entered in the case. Eventually, an attorney ad litem was appointed to represent the interests of the minor child and an order affecting the parent/child relationship was entered based on the master's recommendation. The court made findings of fact and conclusions of law. Appellant requested additional findings of fact and conclusions of law which do not appear to have been adopted by the court.

He has appealed from the order of the court.

In the modified order, the court found that it had continuing and exclusive jurisdiction of this case and the parties and that no other court had continuing exclusive jurisdiction. The court further found that there had been a material and substantial change in the circumstances of the child or of a person affected by the order and that the mother of the child, appellee, had changed the residence of the child from Dallas County to Montgomery County, Texas. The court found that the change of the domicile of the child did not involve a matter of serious or immediate concern for the health or welfare of the child. The court also found that the existing joint managing conservatorship is not unworkable and the appointment of either party as a sole managing conservator would not be a positive improvement for the child, and that the primary residence of the child should remain with the mother. The court ordered that the domicile of the child should be Montgomery County, Texas (the residence of the mother). The court entered specific orders for visitation between the parents, and ordered that the grandparents (parents of appellant) shall have weekend visitation at the discretion of the appellant. The court set out a very detailed annual visitation schedule for the child. Appellant brings seven points of error.

■ The first point of error complains that the judgment is fatally flawed because the court failed to make a finding that the change in the court's decree would be a positive improvement for and in the best interest of the child as required by TEX. FAM.CODE ANN. sec. 14.081(c)(2) (Vernon Supp.1991). Further, that finding could not be made because there is no evidence to support it. The point of error is without merit.

The original motion to modify filed by appellee was a request to move the primary residence of the child from Dallas or Tarrant County to Harris County where appellee and her new husband, both of whom had been employees of the same company, had moved. The company for which she and her husband worked had a policy against employing married couples. Therefore, they left that company and sought work elsewhere.

Appellee testified that she and her husband had both sought other employment in the Dallas–Tarrant County area before the move to Harris County but that they were unable to find any. After the move, and after the motion was filed, it became necessary to amend the motion orally at trial because appellee and her husband and the child had moved to neighboring Montgomery County, Texas. Appellee sought no relief in the amended motion to modify other than permission to change the domicile of the child. Appellant, however, filed a cross-motion seeking to be named sole managing conservator, or in the alternative, to keep him as joint managing conservator with the right of primary possession, or to make certain other adjustments to the periods of possession, transportation responsibilities, and for child support.

At trial, the court found that the appointment of a sole managing conservator would not be a positive improvement for the child (thus denying the request of appellant). Therefore, the action of the trial court was simply to acknowledge an existing fact, that moving the child's domicile along with his mother's change in domicile, was necessary. The court found there had been a material and substantial change in the circumstances of the child or person affected by the order, in particular the child's mother had changed her residence from Dallas County to Montgomery County. Further, a change in the domicile of the child would not involve a matter of serious or immediate concern for the health or welfare of the child. Also, the existing joint managing conservatorship is not unworkable, that is, that the appointment of either party as a sole managing conservator would not be in the best interest of the child. Based upon these findings, we do not agree with appellant that the court's *failure to find* that the modification of the terms and conditions would be a positive improvement for and in the best interest of the child, in so

many words, is necessarily fatal to the decree itself.

From reviewing the evidence in the case, it is abundantly clear that the mother was faced with the necessity for the move to the Harris County area. Also, both maternal and paternal grandparents live near the mother's new residence in Montgomery County, Texas, enabling them more easily to obtain visitation with the child. There is no evidence showing that appointing the father as the joint managing conservator with primary possession would be a positive improvement for the child. Therefore, we hold that the court, as a result of necessity, worked out the best solution possible in the best interest of the child. Appellant's argument based upon apparent legal authority is without real substance or meaning; the court's order is not violative of the spirit of the legislative enactment. Clearly, where there is no evidence of the necessity for a change in the mother's status as the primary possessory parent, it would not be a positive improvement for the child to have his domicile changed from that of his mother. We hold it is a positive improvement, as a matter of law, for the child's domiciliary status to no longer be in limbo, there being no evidence of the need for a change of the primary possessory parent from one to the other. The point of error is overruled.

In his point of error number two appellant argues that the court's conclusion of law number three is in error in holding that a portion of the agreed decree of divorce concerning the county of residence of the child was vague and unenforceable. However, appellant does not show how he is harmed in any way, nor how the child is harmed by the court so holding. Appellee counters that the court was correct in finding that the decree was vague and nonenforceable under TEX.FAM.CODE ANN. sec. 14.021(f)(1) (Vernon Supp.1991) because the decree itself neither established a county of residence of the child until it was altered by further order of the court, nor did it designate the conservator who had the sole right to determine the residency of the child, but rather bestowed the right to determine domicile on both parents.

Clearly appellee recognized that appellant has an interest in determining the domicile of the child. That is specifically why she filed her suit to have the court change the domicile of the child. In reviewing the decree of divorce, the court found that the decree itself was to some extent vague and unworkable. This is because there were no provisions made in the decree for a court in the future to change domicile. Appellant argues that this apparent vagueness is not real because the residence of the child was established as either Dallas or Tarrant County. Further, appellant notes that nothing in the decree deprives the court of the power to alter the county of residence. Appellant's argument is that if the court intends to alter the domicile of the child, it must do so only pursuant to an agreement or pursuant to the standards of section 14.081(c), which appellant argues that the court failed to do as shown in his point of error number one.

We have discussed appellant's argument under point number one as to section 14.-081(c), and overruled his point. In this connection, while the joint decree gives the father and the mother the joint right to determine a child's domicile, we recognize that circumstances may materially change affecting either the child or the parties so that the decision must become one parent's decision, it being no longer practically made as a joint decision. The court stated in its conclusion of law number three that the agreement and judgment were ambiguous and unenforceable as originally drafted, with which statement we concur.

We determine that this point of error is without merit in that, as we have held under point of error number one, the court was faced with the *necessity* of rendering a decision in the best interest of the child, which the court did. It would be well if the parties were able to work out an agreement concerning their joint custody relationship, but in the absence of such agreement, there is no entity other than the court which may act in the best interest of

the children of this state. Point of error number two is overruled.

In point of error number three, appellant argues that the court failed to find that the residency restriction clause contained in the decree of divorce was a material inducement for appellant to agree to the terms of joint managing conservatorship. Appellant requested this as a proposed finding of fact number three. In point of error number four, appellant complains that the trial court erred in denying appellant's request to become sole managing conservator, arguing that if the court found the original agreement to be vague and unenforceable, it should have permitted the parties to try the custody issue solely on the basis of best interest of the child so that they would not have agreed to a vague, unenforceable provision.

In support of his arguments for point of error number three appellant argues that it is a fair inference that had he known the mother was to move the child in six months, he would have opted to try the custody issue at the time of the divorce, under a much simpler burden of proof than that required in subsequent custody determinations. We find that his arguments in both points of error number three and number four are specious, not supported by any factual references to the record, and are not supported in law by any authority or case citation. Both points of error are overruled.

We note at this point that the real difficulty in this case is that a father, with close ties to his child, is now going to undergo extended periods of time where he is absent from his child. There is no way this court, nor any court on the face of the earth, can grant to a parent who is not the primary caretaker of a child as much visitation as that parent would have were the parents to remain married and living together. Neither the legislature, nor any court of this state, nor the Supreme Court has ever fashioned any remedy to permit both parents equal access to a child when the parents by necessity, after divorce, reside in regions far distant from each other. While we recognize the deep concern and anguish that the father in this case has over the absence from his child, we are powerless to effect any remedy which would in any way benefit the child. The legislative remedy of "joint custody" has done nothing to ease this type of situation either. In fact, as this case demonstrates, "joint custody" may raise false hopes in the nonpossessory parent that cruelly become apparent only after the fact.

In point of error number five appellant complains of conclusion of law number nine, that the change of the residence is not a substantial and unexcused violation of the terms and conditions of the existing conservatorship decree. He complains that such conclusion of law is against the great weight of the evidence or alternatively that there is no evidence to support such a conclusion.

Appellant complains of a conclusion of law, not a finding of fact. However, the court's conclusion is just the trial court's evaluation of the facts. Appellant, in order to prevail on point of error number five, must show that, as a matter of law, appellee's move to Montgomery County constitutes a substantial and unexcused violation of the court's order. In order to determine the legal status of the conclusion, we must consider the factual sufficiency of the evidence supporting the conclusion.

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.).

An assertion that the evidence is "insufficient" to support a finding of fact

can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

■ Appellant argues that appellee and her new husband were aware of the company restrictions against their being married to each other prior to the time of their marriage, and the mother or the new husband could have resigned and sought other employment locally in the area where they were. It is apparent that neither appellee nor her new husband concealed the fact of the marriage from their employer. Appellant points out that the testimony revealed the existence of other available jobs in the field in which appellee and her husband were employed in the Dallas–Fort Worth area, although not with the company by whom they were both employed.

The trial court remarked at the hearing that the moving of the child by the mother was a violation of the order, but that it was not substantial or unexcused. Appellant sought finding of facts concerning this issue (which were not granted by the court) which would have found that the violation in effect was substantial and unexcused. Appellant points to the testimony of the employer of appellee and her husband that one or the other could have left employment voluntarily and one could have retained employment. He surmises therefore that one or the other could have obtained other employment within the area, and argues there is no evidence that the child's well-being required the move or that there were any health reasons or family emergencies. The mother simply wanted to move to be near her family. He argues that to hold that such a violation is not substantial and unexcused is supported by no evidence or is against the great weight of the evidence. We disagree.

There is evidence presented by both appellee and her new husband that they believed when they married that the employer would make an exception to the nepotism policy, because both were outstanding employees of the company. However, the company did not. Appellant does not challenge the factual sufficiency of the court's findings, and his proposed findings were not adopted. Therefore, we hold that there is sufficient evidence to justify the trial court in its conclusion of law number nine. Point of error number five is overruled.

■ In point of error number six, appellant complains the trial court erred in conclusion of law number ten, that the decree has not become unworkable and inappropriate under the circumstances. He argues that the conclusion is against the great weight and preponderance of the evidence, that is, in his opinion the decree has become unworkable and inappropriate. Appellee counters, and we agree, that the evidence indicates that appellant and appellee have continued to work with each other as joint managing conservators, excluding only this dispute. In regards to this dispute itself, the parties attempted negotiations and each made concessions regarding the issues, and during the hearing on the motion to modify, worked out a visitation schedule. Each party contends their main interest is to do what is in the best interest of the child. We conclude the trial court did not err in its conclusion of law number ten, that the decree has not become unworkable and inappropriate. Conclusion of law number ten is supported by the evidence and is not in error. The point of error is overruled.

■ In point of error number seven, appellant complains that an admitted portion of the social study was performed by a social worker who did not testify. Therefore, part of the report was hearsay and was wrongfully admitted over his objection. In support of this he notes that the social study was bifurcated, that is part of the social study was conducted by a social worker employed by the Tarrant County Family Courts and another portion was conducted by a social worker from Richmond, Texas, the area in which the mother lived. At trial Maxine Love, the Tarrant County social worker, was called as a witness and reviewed her findings with the

court. Appellant offered only that portion of the social study prepared by Love into evidence. No objection was made by any party. The court thereafter admitted both parts of the social study over appellant's objection that he did not have the opportunity to cross-examine the absent worker. Arguing that this is in effect a hearsay objection, he cites as authority that a social study ordered by the court is no evidence upon which a court can base its decision without first being admitted into evidence and subjected to both direct and cross-examination by all parties. *McPherson v. McPherson,* 626 S.W.2d 349 (Tex.App.—Fort Worth 1981, no writ). In *McPherson,* Justice Spurlock Sr. writing for the court held:

"To deny a party the opportunity to examine or cross-examine the author of such a report deprives that party of a valuable right to deny, contradict or overcome by other evidence the matters contained in the report. Even if it can be said in such a case that the court's decision would have been the same without considering the report, the aggrieved party still has been deprived of information possibly valuable to him and has been denied the opportunity to properly present his case both in the trial court and in the appellate court."

*Id.* citing *Kates v. Smith,* 556 S.W.2d 630, 632 (Tex.Civ.App.—Texarkana 1977, no writ). He argues that it is difficult to ascertain to what extent the trial court used the portion of the social study by the absent worker to arrive at its conclusion and therefore the trial objection to the admissibility should have been sustained. Appellant argues under *McPherson,* since the report was erroneously admitted, this cause must be remanded.

We do not disagree with the philosophy or the holding of *McPherson.* However, as appellee argues, the entire social study should have been admitted as one document because the report falls within the exception to the hearsay rule for governmental records found in TEX.R.CIV.EVID. 803(8). We note the rule provides that:

Records, reports, statements, or data compilations, in any form, of public of-

fices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or (C) factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate lack of trustworthiness.

*Id.* We hold that the social study made as the result of an order of a court in a matter affecting the parent/child relationship is a matter authorized and imposed by law upon social workers, and that the workers have the duty to make such a report. Further, the reports consist of factual findings resulting from such investigations made pursuant to authority granted by law. We find the report is an exception to the hearsay rule. Therefore, we hold the court committed no error in not sustaining the objection as to the hearsay nature of the testimony of the absent social worker.

We further observe, as appellee points out, that even had appellant's objection been correct and sustained, the witnesses who were interviewed by both social workers were present in court and testified, subject to cross-examination. This fact is different than that considered by the court in *McPherson.* Therefore, the statements which were made by the witnesses to the social workers contained in the social study itself, could be challenged at the hearing by examination of the witnesses. Since both reports were principally composed of summaries of interviews of the witnesses who later testified, the admission of the report is not harmful because the court heard testimony from the live witnesses. We hold there was no error in admitting the report, but if we are incorrect, we find that such error was not harmful. It did not lead to the rendition of an improper judgment. The point of error is overruled.

Having overruled all seven points of error, we affirm the judgment of the court.