TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00481-CV







Sensitive Care, Inc., d/b/a HEB Nursing Center, Appellant



v.



Texas Department of Human Services, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 94-01921, HONORABLE PETER M. LOWRY, JUDGE PRESIDING







 In a contested-case adjudication, the Texas Department of Human Services (the
"Department") denied Sensitive Care, Inc., (the "Company") continued authority to provide
Medicaid assistance under a contract with the State of Texas. (1) In the Company's suit for judicial
review, the district court affirmed the Department decision and rejected the Company's request
for declaratory relief. The Company appeals. We will reverse the district-court judgment and
remand the case to the Department.



THE CONTROVERSY


 Until rendition of the final order we now review, the Company provided Medicaid
assistance, under a contract with the State, to patients in the Company's nursing home. 
Department employees inspected the facility in October 1990, finding several instances in which
the Company failed to comply with State and federal regulations pertaining to patient-care plans
and the use of physical restraints on patients. Notwithstanding these violations, the Department
"recertified" the Company for 1991-92 with a proviso for automatic cancellation of the Company's
contract if the deficiencies were not corrected. Another inspection in October 1991 again revealed
violations of the regulations with regard to patient-care plans and physical restraints. The
Department required correction of the deficiencies within ninety days. An inspection in
November 1991 revealed the violations had not been corrected. When the deficiencies were found
uncorrected in an inspection in January 1992, the Department "decertified" the Company as a
Medicaid provider and rescinded the Company's contract effective January 31, 1992. Following
a contested-case hearing, the Department declined to set aside its actions. The district court
affirmed the Department decision after a substantial-evidence review. See Administrative
Procedure Act, Tex. Gov't Code Ann. § 2001.174 (West 1996) ("APA"). (2)



FEDERAL STANDARDS FOR PATIENT CARE


 The Department conducts inspections to ensure that Medicaid providers comply
with minimum standards of patient care prescribed in federal and State regulations. The federal
regulations distinguish between "level A" deficiencies, which pose an immediate threat to patient
safety, and "level B" deficiencies which do not. See 54 Fed. Reg. 5359 (1989). The Department
decision in the present case rests upon deficiencies pertaining to patient-care plans and the use of
physical restraints on patients. Both are "level B" deficiencies.

 In the Company's first point of error, it contends the Department decision is
arbitrary, capricious, and an abuse of discretion because it is based solely upon repeated "level
B" deficiencies that Congress never intended as grounds for terminating Medicaid certification. 
We disagree.

 We do not believe the distinction between levels A and B was intended to preclude
termination solely on the latter class of deficiencies. Indeed, the division into two classes was
intended to avoid any "misunderstanding that violations of the `lesser' requirements would not
be subject to Federal enforcement." 54 Fed. Reg. 5316, 5317 (1989). Both classes are equally
binding and enforceable; they are of equal dignity and not part of a qualitative hierarchy. See id.;
see also 56 Fed. Reg. 48826, 48827 (1991). The congressional intention was simply that level
B deficiencies might be corrected through means other than immediate termination. 54 Fed. Reg.
5316, 5318 (1989).

 The Department did not immediately terminate the Company's authority and
contract merely on the basis of the two level B deficiencies. Instead, the Department decision
rests expressly upon 42 C.F.R. § 442.105(d). This regulation requires a state to terminate
certification when an inspection reveals a repetition of deficiencies that existed in a preceding
certification period unless the state is able to show (1) the provider achieved compliance at some
point in the earlier period or (2) made a good-faith effort to remain in compliance but failed to do
so for reasons beyond its control. 42 C.F.R. § 442.105(d) (1995). The Company's argument
would effectively negate this provision and render essentially voluntary a provider's obligation
to remedy level B deficiencies. We overrule the Company's first point of error.



HEARSAY EVIDENCE


 In its second point of error, the Company contends there is no evidence that
deficiencies found in the October 1990 inspection were in fact the same deficiencies as those found
in the subsequent inspections in October 1991 and January 1992. This contention depends upon
whether the Departmental report of the October 1990 inspection was erroneously admitted in
evidence over the Company's objection.

 The Company objected to the offer of the report in evidence "for the truth of the
matters contained therein." Interpreting the objection liberally, we hold it sufficient to inform the
hearing officer that the Company intended an objection founded on the hearsay rule.

 No testimony was elicited to corroborate the contents of the written report. The
Company contends this effectively denied it an opportunity to examine or cross-examine the
authors of the report. This does not, however, preclude admission of the official report in
evidence. It is a matter pertaining only to the weight proper to be assigned the document. See
Tex. R. Civ. Evid. 803(8)(B); Bingham v. Bingham, 811 S.W.2d 678, 684 (Tex. App.--Fort
Worth 1991, no writ); 32 C.J.S. Evidence § 626 (1964).

 A copy of the inspection report accompanied a "certificate" made by the purported
custodian of Department records, over his signature and the Department seal, stating the copy was
a true replica of a document contained in the official records of the Department. See Tex. R. Civ.
Evid. 901(b)(7). The face of the copy shows it is a pre-printed form, entitled "Statements of
Deficiencies and Plans for Corrections," issued by the federal Department of Health and Human
Services Health Care Financing Corporation and approved by the federal Office of Management
and Budget for use in evaluating nursing-home facilities. The copy purports to be a report
regarding the October 1990 inspections. It bears on each page the purported signature of the
facility director acknowledging that she had read and was aware of the deficiencies reported
therein. See Cowan v. State, 840 S.W.2d 435, 436-39 (Tex. Crim. App. 1992) (face of document
may show circumstantially its authenticity and requisites for admissibility as public record). A
duty rested upon the Department to inspect the Company's facility and to make a report thereof. 
See 42 C.F.R. § 488.305-.335 (1995); 40 TAC §§ 19.1(b)(1), 19.101, 19.2202 (West 1995). The
report was therefore admissible "unless the sources of information or other circumstances indicate
a lack of trustworthiness." Tex. R. Civ. Evid. 803(8). We find no such impediment to
admissibility here and the October 1990 report came within this exception to the hearsay rule. 
The decision in Wright v. Lewis, 777 S.W.2d 520 (Tex. App.--Corpus Christi 1989, writ denied),
is not to the contrary. That decision pertains to a communication to an agency from an outsider,
and not a record of the agency setting forth its activities or matters within its authority to
investigate or its duty to report, as contemplated by Rule 803(8). Id. at 524. We overrule the
Company's second point of error. 



SUBSTANTIAL EVIDENCE 


 In point of error three, the Company contends the body of evidence does not
reasonably support the Department's findings of fact; these, in turn, do not reasonably support
the Department's conclusions of law; and, the conclusions of law are legally erroneous for other
reasons as well. The Company cites in support the decision in Texas Health Facilities
Commission v. Charter Medical-Dallas, 665 S.W.2d 446, 452-53 (Tex. 1984). Under the
peculiar function of the "substantial-evidence rule" laid down in that decision, all the Company's
contentions are arguable as a want of substantial evidence even though some do not pertain at all
to the body of evidence. See John Powers, Judicial Review of the Findings of Fact Made by Texas
Administrative Agencies in Contested Cases, 16 Tex. Tech. L. Rev. 465, 498-99 (1985).

 The Department determined as follows in its conclusions of law: (1) the Company
violated 25 TAC § 145.14(7) (3) by using physical restraints upon patients without having a
physician's order to do so and violated 40 TAC § 19.401(a) and 42 C.F.R. § 483.13(a) by failing
to determine, through use of a care plan, that physical restraints were necessary or that less-restrictive alternatives were not feasible; (2) the Company violated 40 TAC § 19.602 and 42
C.F.R. § 483.20 by failing to develop care plans for two patients and failing to mention in other
patients' care plans that the patients were subject to physical restraints and suffered from skin
problems; and (3) the Department justifiably denied "recertification" because the inspections in
October 1991 and January 1992 revealed deficiencies in the use of physical restraints and the
maintenance of patient-care plans that were repeat deficiencies from the October 1990 inspection
and certification period. (4)

 In purported support of the foregoing conclusions of law, the Department's final
order sets forth the following findings of fact pertaining in the main to the results of the January
1992 inspection: (5)



1. Fourteen of thirty patients were subject to physical restraints.


2. Company records did not indicate that less-restrictive means of restraint had
been considered or attempted.


3. In four instances, restraints were authorized by physician orders but the
orders were dated before the October 1991 inspection.


4. Eleven of the fourteen restrained patients had care plans. One such plan,
dated before October 1991, mentioned the use of physical restraints, but
nine of the care plans, dated between October 1991 and January 1992, failed
to mention physical restraints at all.


5. Physical restraints were used in ten instances without physician orders and
in those cases the Company failed to determine through use of a care plan
that the restraints were necessary or that less-restrictive alternatives were not
feasible.


6. In one instance, the patient's care plan did not mention that the patient
suffered from eight separate pressure sores at the time of the October 1991
inspection.


7. In two instances, the patients' care plans did not mention that the patient was
subject to vest restraints at the time of the October 1991 inspection.


8. In two instances, the patients did not have care plans at the time of the
October 1991 inspection, even though they had resided in the facility since
October 23, 1990, and January 31, 1991, respectively.



 We believe the findings of fact reasonably support the Department's Conclusion
of Law Two regarding deficiencies in the matter of care plans and a resulting violation of the
minimum standards of care set out in 40 TAC § 19.602 and 42 C.F.R. § 483.20. We find no
legal infirmity in Conclusion of Law Two.

 In contrast, we find legal error in the Department's Conclusion of Law One
regarding deficiencies in the matter of physical restraints and an asserted violation of the minimum
standards of care set out in 25 TAC § 145.14(7), 40 TAC § 19.401(a), and 42 C.F.R.
§ 483.13(a). Consequently it may not be said that the Department's findings of fact support its
Conclusion of Law One.

 Based upon supplementary briefs furnished by the parties, we conclude that 25
TAC § 145.14(7) did not apply to the Company after September 30, 1990, a date preceding the
first inspection in October 1990, even though the regulation was not repealed until August 31,
1993. See 18 Tex. Reg. 3060 (1993). The provisions of 25 TAC § 145.14(7) ceased to apply
to the Company because, effective October 1, 1990, the Company as a Medicaid provider became
subject to new and different regulations promulgated by the Department of Human Services. See
40 TAC § 19.1 et seq. (West 1995). These new regulations did not require physician orders
authorizing physical restraints nor did they prohibit restraints except as necessary to protect from
injury the patient and others. The provisions of 25 TAC § 145.14(7) remained applicable to other
operations and facilities regulated by the Department of Health, but not to Medicaid providers
regulated by the Department of Human Services. See 25 TAC § 145.111; (6) 15 Tex. Reg. 5577
(1990).

 And we cannot agree that 40 TAC § 19.401(a) and 42 C.F.R. § 483.13(a) required
the Company to determine that physical restraints were necessary or that less-restrictive
alternatives were not feasible. These regulations took a different tack. They prohibited physical
restraints for purposes of convenience or discipline and required that when used they must be
released at specified times and their use must be documented in the clinical records. The new
regulations do not mention "less restrictive alternatives" and we find no basis in the record for
concluding that the word "necessary," as used in Conclusion of Law One, is a short-hand antonym
for "purposes of convenience or discipline" as used in the regulations. In sum, the deficiencies
stated in Conclusion of Law One do not correspond to the requirements found in the regulations
cited therein; and the requirements found in the applicable regulations are not stated as
deficiencies in the conclusion of law. We hold, therefore, that Conclusion of Law One is legally
erroneous.

 Must we nevertheless affirm the Department's final order and decision on a theory
that Conclusions of Law Two and Three are a "valid basis" in the record for what the agency has
done, notwithstanding its error in Conclusion of Law One? It is, of course, a general rule of
administrative law that a reviewing court must uphold an agency decision on any legal basis
shown in the record, even though the agency may have stated an erroneous reason for its decision. 
See Railroad Comm'n v. City of Austin, 524 S.W.2d 262, 279 (Tex. 1975) (agency order omitting
to state any legal basis for decision affirmed on question of law shown in record); Texas
Employment Comm'n v. Hays, 360 S.W.2d 525, 527 (Tex. 1962) (agency decision based on
erroneous construction of statute affirmed when proper construction dictated same decision); cf.
Gulf Land Co. v. Atlantic Ref. Co., 131 S.W.2d 73, 84 (Tex. 1939) (reviewing court forbidden
to affirm agency order on basis of controverted fact question not decided by agency itself in
reaching its decision).

 The general rule is not, however, unqualified. Concerning an agency's conclusions
of law, a reviewing court must measure the sufficiency of the agency's order "by what it says"
and not by judicial speculation about how the agency reasoned in reaching its final decision. 
Morgan Drive Away, Inc. v. Railroad Comm'n, 498 S.W.2d 147, 152 (Tex. 1973). Specifically,
a reviewing court is forbidden to uphold an agency's final decision based upon one conclusion of
law when the agency rested its decision upon a different conclusion of law stated in its final order. 
Gulf Land Co., 131 S.W.2d at 84. The same principle forbids our affirming the Department
decision based upon Conclusions of Law Two and Three when the agency expressly based
Conclusion of Law Three and its final decision upon Conclusions of Law One and Two jointly. (7) 
We must therefore reverse the agency decision and remand the case to the Department for such
proceedings as may be necessary in light of our opinion.

 In that regard, we should discuss further the Company's argument under point of
error three in which the Company contends the body of evidence does not reasonably support the
Department's findings of fact.

 The evidentiary record contained both documentary evidence and testimony,
including copies of inspection reports pertaining to the inspections in October 1990, October
1991, November 1991, and January 1992. The Company adduced controverting evidence
including the care plans and medical records of particular patients. While it is true, as the
Company contends, that the Department did not adduce testimony corroborating the deficiencies
recorded in the inspection reports, we have held above that the reports themselves constituted
competent evidence. The question of what weight to assign the conflicting evidence was a matter
for the agency to determine. We are forbidden to do so. See APA § 2001.174(2). When, as
here, the evidence would reasonably support either an affirmative finding or a negative finding,
we must of course uphold the agency finding. See Auto Convoy Co. v. Railroad Comm'n, 507
S.W.2d 718, 722 (Tex. 1974). We hold the Department's findings of fact are not unreasonable
inferences from the body of evidence as it presently exists.



DECLARATORY JUDGMENT


 The Company petitioned the trial court for a declaratory judgment that the
Department's authority to terminate Medicaid certification, based upon repeat deficiencies from
a previous certification period as provided in 25 TAC § 145.144(f), (8) did not survive repeal of that
regulation at a date before rendition of the Department's final order in the contested case. 
Consequently, the Company contended, the Department exceeded its authority in terminating the
Company's certification on the basis of 25 TAC § 145.144(f) and the trial court erred in not
awarding the Company declaratory relief to that effect. In point of error four, the Company raises
the claim in this Court.

 The Company's argument depends upon the correctness of its underlying theory
that the Department's authority to terminate certification vanished with the repeal of 25 TAC
§ 145.144(f). The theory is incorrect. Notwithstanding the repeal of 25 TAC § 145.144(f), the
provisions of 42 C.F.R. § 442.105(d) remained in effect as a federal requirement applicable to
the case and binding on the Department. The federal regulation authorized termination for repeat
deficiencies from an earlier certification period, as discussed previously in our opinion. The final
order does not mention 25 TAC § 145.144(f). Any declaratory judgment pertaining to that
regulation would have amounted in the circumstances to an advisory opinion beyond the power
of the trial court to render. See Southwest Airlines v. Texas High-Speed Rail Auth., 863 S.W.2d
123, 125 (Tex. App.--Austin 1993, writ denied). We overrule point of error four.



PRE-JUDGMENT INTEREST


 In point of error five, the Company contends it is entitled to pre-judgment interest
on the amount of Medicaid payments it did not receive after termination of its contract--payments
it is entitled to receive, however, only on obtaining a final judgment that its contract was
erroneously terminated. We do not reach this point of error because it has not been determined
that the contract was erroneously terminated.

 For the reasons stated in our discussion of point of error three, we reverse the
Department's final order and the trial-court judgment affirming that order. We remand the case
to the Department for further proceedings not inconsistent with our opinion.



 

 John Powers, Justice

Before Justices Powers, Jones and B. A. Smith

Reversed and Remanded

Filed: July 31, 1996

Publish 
1. The State is required to ensure that providers of
Medicaid assistance, such as Sensitive Care, Inc., meet federal
regulations that fix minimum standards of patient care. See 42
C.F.R. § 430.10-.30 (1995). Originally the Texas Department of
Health performed that function; the function was transferred to
the Texas Department of Human Services effective September 1,
1993. See Act of June 8, 1993, 73d Leg., R.S., ch. 747, § 2,
1993 Tex. Gen. Laws 2920, 2921-24; Tex. Hum. Res. Code Ann. §
32.002-.042 (West 1990 & Supp. 1996) (the "Code").


 A Department of Health examiner conducted the contested case
now before us and issued a proposal for decision. The Department
of Health did not, however, receive the proposal for decision
until after September 1, 1993, the date administration of the
federal regulations was transferred to the Department of Human
Services. An administrative law judge employed by the latter
Department reviewed the contested-case record and, under
authority delegated by the Department governing board, issued on
November 18, 1993, a final order adjudicating the case. See Code
§ 21.003(a), .004; 40 Tex. Admin. Code § 79.1607 (West 1995)
("TAC"). The final order denied the Company continued
participation ("recertification") in the Medicaid program based
upon the Company's failure to meet minimum standards of patient
care, a condition of the Company's contract with the State to
furnish Medicaid assistance. See 42 C.F.R. § 442.12 (1995). For
clarity and simplicity, we will discuss the controversy and the
appeal as if the Department of Human Services (the "Department")
had conducted the contested case from the beginning, departing
from such usage in our discussion of the Company's point of error
three.
2. All administrative actions in the present case occurred
before September 1, 1993, and are governed by the Administrative
Procedure and Texas Register Act ("APTRA"). See APTRA, 64th
Leg., R.S., ch. 61 § 19, 1975 Tex. Gen. Laws 136, 136-148 (Tex.
Rev. Civ. Stat. Ann. art. 6256-13a, § 19, since repealed and
codified at Tex. Gov't Code Ann. § 2001.001 et seq. (APA)). 
Because the codification of the APA effective September 1, 1993,
had no substantive effect on the relevant provisions, we cite the
Texas Government Code for convenience.
3. 25 TAC § 145.14(7) (West Supp. 1992-93) was repealed
effective August 31, 1993. See 12 Tex. Reg. 2922, 2937 (1987),
repealed by 18 Tex. Reg. 3060 (1993). Most of section 145 of
title 25 of the Texas Administrative Code was repealed by the
Department of Health on this date. Throughout our discussion, we
will for convenience cite the 1992-93 version of title 25 of the
Texas Administrative Code. 
4.   The regulations cited in the Department's conclusions of
law provided as follows:


 25 TAC § 145.14(7) required that patients be free of
physical restraints except when restraints were authorized in
writing by a physician for a specified and limited period of
time, or when necessary to protect a patient from injury to
himself or another. As discussed in the text, this regulation
was not applicable at any time material to the present case.


 40 TAC § 19.401(a) (West 1995) prohibits use of physical
restraints for purposes of discipline or convenience, but allowed
their use in treating a patient's medical symptoms. When so
used, the restraints must be released as necessary to prevent
deterioration in the patient's physical condition (but at least
at two-hour intervals for a ten-minute period) and such use must
be documented in the patient's clinical records. The provisions
of 42 C.F.R. § 483.13(a) (1995) are generally to the same effect.


 40 TAC § 19.602 (West 1995) requires the development of a
comprehensive care plan for each patient within seven days after
completion of an antecedent functional-capacity assessment for
the patient. Under another regulation, such assessment must be
performed within fourteen days of a patient's admission or before
October 1, 1991, whichever is later in time. New assessments are
required promptly after any significant change in the patient's
physical or mental condition. These, in turn, are required to be
set forth in the patient's care plan. The required contents of
the care plan are: measurable short-term and long-term
objectives and timetables to meet the patient's medical, nursing,
and "psychosocial needs" as identified in the assessment. The
provisions of 42 C.F.R. § 483.20 (1995) are generally to the same
effect as 40 TAC § 19.602.
5.   The findings are somewhat unclear because the inspection
date to which they refer is uncertain. We have restated the
findings, in the interest of clarity, as best we can.
6. See 18 Tex. Reg. 302 (1992), repealed by 18 Tex. Reg.
3060 (1993).
7.   In a particular case, of course, the agency record may
show with reasonable certainty that the agency would have reached
the same decision notwithstanding the invalidity of one of its
several conclusions of law or findings of fact. In such a case,
a reviewing court will not reverse the agency decision because
the error has not prejudiced the complaining party. See APA
§ 2001.174(2) (reviewing court "shall reverse or remand the case
for further proceedings if substantial rights of the appellant
have been prejudiced because the administrative findings,
inferences, conclusions, or decisions" are affected by specified
errors of law). The record in the present appeal does not show
with reasonable certainty that the Department would have reached
the same final decision and Conclusion of Law Three based upon
Conclusion of Law Two standing alone.
8. See 3 Tex. Reg. 3194, 3197 (1978), amended by 14 Tex.
Reg. 5071 (1989), repealed by 18 Tex. Reg. 3060 (1993).