TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00199-CV






Robert Lee Funk, Appellant



v.



Julie Renee Funk, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 95-11223, HONORABLE NORMAN LANFORD, JUDGE PRESIDING 






 Robert Funk appeals from a trial-court order refusing the relief requested in his motion to
modify a divorce decree. We will affirm the order.


The Controversy



 Julie and Robert married in 1990 and had two children. They married in California, Julie's
residence at the time and home of one of her parents. Julie and Robert moved to Texas, Robert's home,
to allow him to work as a salesman for his brother-in-law. They had financial problems during their
marriage. There was a great deal of tension concerning whether Robert worked hard enough at the
business. Julie worked part-time and cared for the children.

 At the time of the divorce, in February 1996, Julie suffered from depression for which she
had had counseling; she had attempted suicide in December 1995. Shortly after the divorce, she again
attempted suicide. At that point, her father and stepmother intervened and brought Julie to Florida to
recover with them. There, Julie received therapy and returned to school.

 The divorce decree provided for a joint-managing conservatorship and awarded Julie an
exclusive right to determine the children's residence. Before leaving for Florida, Julie surrendered the
children to Robert under an agreement that he would have possession for ninety days while she was in
Florida. (1) After obtaining possession and about three months after the divorce, Robert moved to modify
the decree. The trial court refused relief. Robert brings nine points of error attacking the court's order. 
We will affirm the order.


Statutory Test



 In point of error eight, Robert contends the trial court abused its discretion in overruling his
motion to modify the decree because the court erroneously applied the statutory criteria for a change from
joint to sole conservatorship rather than the statutory criteria for modification of a joint conservatorship. 
See Tex. Fam. Code Ann. §§ 156.202 (modification of joint conservatorship); 156.203 (joint to sole
conservatorship) (West 1996). (2) Robert's live pleading at the time of the hearing requested that the court
change the existing joint conservatorship to a sole managing conservatorship, with him as the sole managing
conservator. In the alternative, he requested modification of the existing joint-conservatorship arrangement
to allow him to designate the children's primary residence. On appeal, he contends he amended his
pleadings verbally at the hearing to ask only that the existing joint managing conservatorship be modified;
and, therefore, the court erred in applying the test for changing a joint conservatorship to a sole
conservatorship. 

 The statement of facts does not support Robert's contention; in view of the live pleadings
at the time of the hearing, his verbal remarks were ambiguous. Robert's counsel referred in opening
argument to giving Robert "primary custody" which could refer to either of the alternate conservatorship
arrangement claimed in the pleadings. Counsel's statements in closing were similarly ambiguous. The trial
court did not err in making findings that encompass the tests set out in both sections of the Family Code
invoked by Robert's live pleadings. We overrule point of error eight.


Expert Testimony



 In point of error nine, Robert complains the trial court erroneously admitted expert
testimony regarding the potential emotional effects on the children if their mother is excluded from their lives. 
Robert objected to the evidence on the ground that expert testimony concerning the children was outside
discovery responses that indicated that the expert would testify about Julie's emotional state. Robert's
point fails for several reasons: his objection was not timely because similar testimony had been given
previously by the expert without objection and the testimony was cumulative of other evidence properly
admitted. Finally, in a bench trial we must presume the court did not base its decision on evidence
improperly admitted. See Gillespie v. Gillespie, 644 S.W.2d 449, 450 (Tex. 1992). Nothing in the
record disestablishes the presumption. We overrule point of error nine.


Change in Circumstances and Best Interests of the Children



 In other points of error, Robert attacks the trial court's failure to find that a material and
substantial change in circumstances had occurred and the court's refusal to modify accordingly the existing
conservatorship provisions of the divorce decree. (3) We need not address Robert's points attacking the trial
court's failure to find a material and substantial change had occurred; the trial court's express findings
concerning the best interests of the children control our decision.

 Even if a trial court makes a threshold finding of a material and substantial change in
circumstances, it does not follow that the court must modify the original custody provisions. Modification
must be based upon an ultimate finding that a change in conservatorship will be in the child's best interests. 
See Tex. Fam. Code Ann. §§ 156.202(2), .203(3) (West 1996). The court found expressly in this
instance that a change in conservatorship would not be an improvement and would not be in the children's
best interests. Accordingly, we will assume, without deciding, that a change in circumstances occurred and
evaluate the evidence supporting these ultimate findings. If the court did not abuse its discretion in these
ultimate determinations, then the court's order must be upheld notwithstanding any erroneous determination
that circumstances had not changed and a concomitant failure to find such a change had taken place.

 When custody arrangements are fixed in a divorce decree, the decree is res judicata as of
that date as to the proper custody of the child and the best interests of the child. See Pearson v. Pearson,
195 S.W.2d 188, 193 (Tex. Civ. App.--San Antonio 1946, writ ref'd n.r.e.). In assessing whether a
modification of custody will be an improvement, the court must focus on the movant's circumstances while
considering the present and future well-being of the children. See In re Rutland, 729 S.W.2d 923, 934-35
(Tex. App.--Dallas 1987, writ ref'd n.r.e.), cert. denied, 488 U.S. 818 (1988). The trial court has wide
latitude in determining what is in the best interest of a child; the court's action may be reversed only when
an abuse of discretion appears from the record as a whole. See Gillespie, 644 S.W.2d at 451;
MacCallum v. MacCallum, 801 S.W.2d 579, 582 (Tex. App.--Corpus Christi 1990, writ denied). 
Robert's points of error raise the issue whether the trial judge abused his discretion because his
determinations are legally unreasonable in the factual-legal context in which they were made. See Landon
v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 939-40 (Tex. App.--Austin 1987, no writ). We refer,
of course, to the evidence adduced in light of the statutory provisions governing the modifications requested
in Robert's motion.

 The evidence received at the modification hearing (4) basically fell into two, usually
diametrically opposed, categories: that given by Robert's witnesses and that given by Julie's witnesses. 
That is why, "[i]n custody matters, where personal observation and evaluation of the parties and their claims
is so valuable, we give great deference to the trial court's judgment." Doyle v. Doyle, 955 S.W.2d 478,
481-82 (Tex. App.--Austin 1997, no writ).

 One important factor raised in the evidence was the animosity between Julie and Robert's
family members and their attempts to exclude her from the children's lives. The evidence permitted a
reasonable inference that Robert and his family had already formed a new family with Leigh Anne, Robert's
girlfriend, taking Julie's place. After his separation from Julie, Robert moved in with his mother. Leigh
Anne eventually moved in as well. When Robert took temporary possession of the children, he, the
children, and Leigh Anne all occupied the same room. Although Robert's mother disapproved of that
arrangement, she made no attempt to change it. Several witnesses testified that the living arrangement was
fine for the children because Leigh Anne was part of the "family environment." Robert testified as follows
concerning the possible effects of the arrangement on the children: "It made me happy, it made them
happy." Robert's mother testified she preferred Leigh Anne to Julie as the children's role model.

 Robert's witnesses were relentlessly critical of Julie. A typical example of the criticism came
from Robert's sister who complained that on one occasion she found only "junk food and sweets" in Julie's
refrigerator. That incident, however, occurred at a time when Julie and Robert were living together. 
Robert, however, "had no faults" as a parent according to his witnesses.

 Julie testified about ongoing problems in communicating with the children and about
Robert's attempt to exclude her from any decision making concerning the children. On one occasion she
was visiting Austin and her children had a school conference about which Robert had failed to inform her. 
Robert also had, without consulting her, involved one of the children in motorized miniature racing, an
activity Julie believed too hazardous because of the child's age. She often had to obtain information about
her children from a friend in Austin, the mother of one of her children's friends, who testified that Julie had
to "fight and scratch" for every moment with her children during Robert's temporary possession.

 Julie and her witnesses concentrated their testimony on Julie's plans for the future. They
described the home environment in which they would be living until Julie obtained an apartment of her own. 
They focused on Julie's plans to become a registered nurse. They expressed no animosity toward Robert;
they commented simply that his family had created problems for Julie because of their constant criticism,
lack of support, and overt preference for Leigh Anne as a "mother figure." Julie adduced expert testimony
concerning her ongoing therapy and the extreme improbability that she would ever again attempt suicide.

 The evidence showed that neither Julie nor Robert, without assistance from their parents,
was capable of supporting the children. Robert testified he did not like, and was not particularly good at,
his job selling "ergonomic" furniture for a business owned by his brother-in-law. After separating from
Julie, he moved in with his mother. Shortly before trial, he moved into a house for which Leigh Anne paid
the rent. Robert adduced no evidence as to any plans to continue his education or improve his job
situation.

 Julie had been the children's primary care giver and had worked part-time after their birth,
often in low-paying child-care-related jobs. Julie adduced evidence of a definite plan to become self-supporting by becoming a registered nurse. She detailed her plan of advancing from her current
employment as a health-care aide, to licensed-vocational nurse, to registered nurse. She introduced in
evidence certificates of completion regarding her first educational steps and testified she was working while
going to school. Her father and stepmother testified as to the ability and willingness of all of Julie's parents
and stepparents to help support her through school.

 As a reason for modifying the decree, Robert relied heavily on Julie's "abandonment" of
the children (surrendering the children to Robert temporarily) when she moved to Florida. The divorce
decree gave Julie an exclusive and unqualified right to determine the children's residence. The decree
included visitation provisions to cover Julie and Robert living within one hundred miles of each other and
also further apart. After Julie's suicide attempt, her family intervened and persuaded Julie, who did not
want to leave Austin, that she needed to be where she could have support. Under the decree, Julie had
every right to take the children with her. Nevertheless, she testified that Robert threatened to take her to
court in an emergency proceeding in which he would seek to prevent her from taking the children and
would seek "sole custody." Julie entered into an agreement to allow the children to remain with Robert for
ninety days while she obtained counseling. Well before the end of the agreed-on ninety days, Robert
moved to modify the conservatorship. The judge could reasonably decline to infer from such evidence that
Julie "abandoned" the children.

 The whole of the evidence reveals that neither Julie nor Robert had ever successfully
functioned as an independent, self-supporting adult; however, each can with assistance perhaps provide
an acceptable home for the children. The evidence also showed that Julie's circumstances rendered it
impractical for Julie to reside in Texas in the near future. The children could not reside with both parents. 
As stated succinctly by one court:


 There is no way this court, nor any court on the face of the earth, can grant to a parent
who is not the primary caretaker of a child as much visitation as that parent would have
were the parents to remain married and living together. Neither the legislature, nor any
court of this state, nor the Supreme Court has ever fashioned any remedy to permit both
parents equal access to a child when the parents by necessity, after divorce, reside in
regions far distant from each other.



Bingham v. Bingham, 811 S.W.2d 678, 682 (Tex. App.--Fort Worth 1991, no writ). No evidence
suggested that Julie or her family would interfere with visitation or attempt to replace Robert in his role as
the children's father if the children were in Florida. Further, at the time of the divorce, Robert knew that
Julie had financial difficulties and knew her family lived in California and Florida, which created a high
probability that she would need to move. Nothing in the evidence suggested that he had attempted to
restrict the children's residence to Texas at the time of the decree. 

 The trial judge's findings are not unreasonable under the evidence and the applicable
statutory criteria. The trial judge therefore did not abuse his discretion in refusing to modify the original
decree. We overrule points of error four through seven. Because they are unnecessary to the disposition
of the appeal, we need not consider points one through three.

 We affirm the trial-court order.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: May 14, 1998

Do Not Publish

1. Additional evidentiary matters will be detailed under the appropriate points of error.
2. The court may modify the terms and conditions of a joint conservatorship order if:


 (1)(A) the circumstances of the child or of one or both of the joint managing conservators
have materially and substantially changed since the rendition

 of the order; or

 (B) the order has become unworkable or inappropriate under existing circumstances; and

 (2) a modification of the terms and conditions of the order would be a positive
improvement for and in the best interest of the child.


Tex. Fam. Code Ann. § 156.202 (West 1996).


 The court may replace a joint managing conservatorship with a sole managing conservatorship if:


 (1)(A) the child's present living environment may endanger the child's physical health or
significantly impair the child's emotional development;

 (B) there has been a substantial and unexcused violation of the terms and conditions
established in the existing conservatorship order; or

 (C) the circumstances of the child or of one or both of the joint managing conservators
have so materially and substantially changed since the rendition of the order that it has
become unworkable or inappropriate under existing circumstances; and

 (2) the appointment of a sole managing conservator would be a positive improvement for
and in the best interest of the child.


Id. § 156.203.
3. In points one through three, Robert attacks the trial court's failing to find that a material change in
circumstances had occurred. In points four through seven, he attacks the trial court's refusing any
modification to the existing conservatorship arrangement.
4. Much of the record consists of attempts to re-litigate pre-divorce matters.


ld seek to prevent her from taking the children and
would seek "sole custody." Julie entered into an agreement to allow the children to remain with Robert for
ninety days while she obtained counseling. Well before the end of the agreed-on ninety days, Robert
moved to modify the conservatorship. The judge could reasonably decline to infer from such evidence that
Julie "abandoned" the children.

 The whole of the evidence reveals that neither Julie nor Robert had ever successfully
functioned as an independent, self-supporting adult; however, each can with assistance perhaps provide
an acceptable home for the children. The